**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GLORIA GUTIERREZ-GONZALEZ,**) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 12 C 333** |
| **v.** ) | |
| ) | **Magistrate Judge Morton Denlow** |
| **MICHAEL J. ASTRUE** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Claimant Gloria Gutierrez-Gonzalez ("Claimant") brings this action under 42 U.S.C.

§ 405(g), seeking reversal and remand of the decision by Defendant Michael J. Astrue,

Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's

application for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI"). Claimant argues that the ALJ failed to build a logical bridge between the evidence

and the medical improvement condition. For the following reasons, the Court grants

Claimant's motion for summary judgment to reverse the decision of the Commissioner,

denies the Commissioner's motion to affirm the Commissioner's decision, and remands the

case to the Social Security Administration for further proceedings consistent with this

opinion.

# I. BACKGROUND FACTS

## A.    Procedural History

Claimant initially applied for DIB and SSI on November 10, 2008, alleging a disability onset date of December 7, 2007.  R. 135-42.  The Social Security Administration ("SSA") denied her applications on March 9, 2009.  R. 45-46. Claimant then filed a request for reconsideration, which the SSA denied on August 14, 2009 R. 47-48. Thereafter, Claimant requested a hearing before an ALJ.  R. 72-73.

On July 13, 2010, Administrative Law Judge Janice M. Bruning ("ALJ") presided over a hearing at which Claimant appeared with her attorney, Augustin Garcia.  R. 25-44. Claimant and Aimee Mowery, a vocational expert ("VE"), testified at the hearing.  *Id.*  On October 22, 2010, the ALJ issued a decision finding Claimant not disabled under the Social Security Act.  R. 11-20.   Specifically, the ALJ found that while Claimant was disabled from May 24, 2008 through June 30, 2009, medical improvement occurred on July 1, 2009 and after that date Claimant had the ability to perform sedentary work with the following additional restrictions: she could not perform work involving ladder, rope, or scaffold climbing; she could only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl and use her right lower extremity; she could not work in an environment with concentrated exposure to respiratory irritants; and she must be able to alternate between sitting and standing positions on an hourly basis.  R. 17.  The ALJ concluded that Claimant is unable to perform her past relevant work but there are a significant number of jobs in the national economy which Claimant can perform.  R. 19.

Claimant then filed for review of the ALJ's decision to the Appeals Council, which denied Claimant's request on November 30, 2011. R. 1-3. Therefore, the ALJ's decision became the final decision of the Commissioner. Claimant subsequently filed this action for judicial review pursuant to 42 U.S.C. § 405(g). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). Dkt. 9.

## B.     Hearing Testimony - July 13, 2010

### 1.     Gloria Gutierrez-Gonzalez - Claimant

Claimant testified at the hearing with the assistance of an interpreter. R. 27. At the time of the hearing, Claimant was thirty-eight years old. R. 200. Claimant completed the tenth grade in Mexico. R. 29. She is married and has one minor child. *Id.* Claimant testified that she was in an accident on December 7, 2007. R. 31. Claimant returned to work three days after her accident and underwent a series of injections and therapy. R. 31. Her last day of work was May 24, 2008. *Id.*

At the time of the hearing, Claimant was taking pain medication. R. 32. She testified that her insurance does not cover anything besides pain medication so she was not able to have a second procedure performed. *Id.* She described her middle and lower back pain as a burning sensation, or as though she is being punctured; she rated that pain as a seven on a scale of ten. R. 33. Her right knee also feels numb and causes pain. R. 34. Claimant testified that she previously saw a mental health specialist who gave her medication for depression, but she was not receiving mental health treatment at the time of the hearing. *Id.*

Claimant can walk for two blocks without pain, can stand for thirty minutes maximum and can sit for an hour maximum. R. 35. She can lift a gallon of milk and a grocery bag but experiences pain in the hip. *Id.* She has trouble climbing stairs, though does it everyday, and had problems with bending, balance, and reaching over her head. *Id.* She can reach in front and can use her hands without pain. *Id.* Claimant has trouble sleeping; her depression medication helps her sleep. R. 36. She has to take a nap two or three times per day, about an hour each time, because her muscles tense up. *Id.*; R. 40.

Regarding daily activities, Claimant drives her son to school everyday, prepares simple meals, and shops if assisted. R. 37. She does not do dishes and can do the laundry slowly. *Id.* She does not clean; her doctors have told her to avoid that type of activity. *Id.* She attends school functions for her children, helps with homework, cares for her minor son in the summer, attends church and sometimes socializes with friends. R. 37-38.

Claimant discovered cysts in her breast in 1996, had surgery, and at the time of the hearing was contemplating breast removal due to new cysts. R. 39. At some point in the hearing, Claimant asked to stand up. R. 39.

### 2. Aimee Mowery – Vocational Expert ("VE")

Aimee Mowery testified as a Vocational Expert ("VE"). R. 40. The VE described Claimant's past relevant work as that of a machine operator, which is a semi-skilled occupation with SVP 3 and light exertion level, and a hand packager, which is an unskilled occupation with SVP 2 and light exertion level. R. 41.

4

The ALJ described a hypothetical individual of Claimant's age, education, and work experience who can: lift and carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk a total of two hours in an eight hour work day; sit six hours in an eight hour work day; never climb ladders, rope or scaffolding; occasionally climb ramps and stairs; occasionally balance, stoop crouch, kneel and crawl; and who should avoid exposure to lung irritants. The hypothetical person was also limited to unskilled, three to four step routine, simple, repetitive tasks. R. 41-42. The VE responded that the hypothetical person could perform the jobs of a sorter of which there are 375 in the region; a hand packager of which there are 1034 in the region; and assembler of which there are 1172 in the region. R. 42. Each of those jobs is an SVP level 2 and exertional level of sedentary. *Id.* The same jobs were available if the individual was also limited to only occasionally pushing and pulling with the right lower extremity and/or if the hypothetical person needed a sit/stand option that allowed her to stand after sitting for one hour. *Id.* For a individual who would be off task twenty percent of the time due to pain or a need to nap, no jobs would exist. R. 43. An inability to read would not impact the availability of the listed jobs. *Id.*

**C.  Medical Evidence**

**1.  Sydney Hillman Health Center**

The record contains medical records collected by the Sydney Hillman Health Center beginning in 2001 and ending in 2008.  R. 226-66.   Through the end of 2008 she presented at Hillman for back problems and was noted to have some depression.  R. 288.

**2.  Los Quiropracticos, LLC**

Notes and records submitted by Los Quiropracticos, LLC (a chiropractic medicine practice) indicate that Claimant was treated primarily by Dr. Jose Castellanos, M.D. ("Dr. Castellanos") between December 2007 and May 2008.  R. 313-60.  Imaging ordered in March 2008 revealed a potential neurofibroma, a hemangioma, and degenerative disc changes. R. 315.  Claimant was referred to a neurosurgeon. R. 322.  Treatment notes from Dr. Castellanos in March 2008 indicate that Claimant continued to suffer severe back pain. R. 326-27.  Multiple courses of treatment were attempted, including lumbar epidural steroid injections.  R. 335-36.  A neurophysiologist to whom Claimant was referred in June 2008 found evidence of nerve root compression.  R. 340.

**3.  Peterson Surgery Center – Dr. Mohammad Hosseinian, M.D.**

On May 21, 2008 Dr. Mohammad Hosseinian, M.D., ("Dr. Hosseinian"), administered lumbar epidural steroid injection for severe neck pain at Peterson Surgery Center.  R. 219. In August 2008, Dr. Hosseinian ordered a CT of Claimant's lumbosacral spine which revealed multilevel annular tears and sacroiliac joint sclerosis.  R. 347-48.   A lumbar

provocative discogram was performed on August 8, 2008 because conservative pain management had not been successful. R. 349.

### 4. Provena St. Joseph

Claimant was admitted to Provena St. Joseph Medical Center on September 30, 2008 and released on October 3, 2008. The records note that Claimant was involved in a motor vehicle accident on December 7, 2007 and she suffered from lumbar spine damage and back pain. R. 269. Notes reflect that extensive conservative treatment was attempted with no success, so a lumbar fusion was performed during the September-October 2008 hospital stay. *Id.*

### 5. Diversey Medical Center

Work Status Medical Reports from Diversey Medical Center indicate that from May 2008 through March 2009 Claimant was on medical excused absence from work due to low back pain, radiculopathy (nerve damage), and her eventual status post-lumbar fusion surgery. R. 201-18. Most of these reports are signed by Dr. Michel Malek, M.D. ("Dr. Malek") who treated Claimant throughout this time period.

Treatment notes on July 24, 2008 reflect Claimant's statements that the epidural steroid injections did not help her symptoms. R. 345. Claimant reported that her symptoms continued to bother her and made her miserable. At that point she said stated that "she cannot live with her symptoms." *Id.*

Claimant returned to Diversey Medical Center on February 5, 2009. R. 393-94. Dr. Malek's notes review the various courses of treatment attempted before Claimant's lumbar

fusion procedure in September 2008. *Id.* When she presented at Diversey in February 2009, she had been participating in physical therapy for approximately eight weeks. *Id.* Dr. Malek noted that Claimant had improved significantly after the surgery and anticipated that another four weeks would get her to maximum medical improvement. *Id.* She was still on off-work status. R. 394. On March 19, 2008 Claimant reported pain in the upper thoracic spine and knees. R. 397. Dr. Malek indicated that she should begin a conditioning program. *Id.* On April 16, 2009 Claimant reported that her pain level from before the surgery was much improved but she continued to have some pain. R. 399. Dr. Malek performed a joint injection on Claimant's right side that day. *Id.* On May 14, 2009, Claimant reported that the joint injection had not helped and she was having problems with walking, as well as right leg pain. R. 401. As of May 14, 2009, her status was still "off work." *Id.*

### 6.    Dr. Herman Reyes, M.D.

Dr. Herman Reyes, M.D. ("Dr. Reyes") began treating Claimant in December 2008 at which time she reported that pain persisted after her operation. R. 304, 305. She was using a lumbar brace and walking with a cane. R. 305. In addition to her spine and back problems, she reported a history of hypothydroidism, cardiac arrhythmias, depression and asthma. *Id.* In January 2009 Dr. Reyes reported that Claimant's back pain was decreasing and she was to begin physical therapy. R. 304.

On June 29, 2010, Dr. Reyes completed a Medical Questionnaire. R. 413-14. He indicated that he had been treating Claimant for approximately eighteen months and listed her diagnoses as hypothyroidism, depression, asthma, sigmoid stenosis, chronic lower back

8

pain, mantitis, and cardiac arrythmias. R. 413. As symptoms, Dr. Reyes listed fatigue, abdominal pain, constitpation, and sad mood. *Id.* Dr. Reyes opined that Claimant's spine damage does not allow physical work activities and her depression inhibits her social functions. *Id.* Dr. Reyes's prognosis was that Claimant will not recover to the point of being capable of gainful employment. R. 414. It was his opinion that Claimant was not capable of performing a full time job. *Id.*

### 7. Dr. Angelica Ortiz, Psy.D. - State Agency Consulting Psychologist

Dr. Angelica Ortiz, Psy.D. ("Dr. Ortiz") performed a consultative examination on Claimant on February 23, 2009. R. 363-66. Dr. Ortiz spent thirty minutes with Claimant and diagnosed her with major depressive disorder, single episode in partial remission. R. 366.

### 8. Dr. Terry Travis, M.D. – State Agency Psychiatric Review Technique Questionnaire

Dr. Terry Travis, M.D. ("Dr. Travis") completed a Psychiatric Review Technique form on March 5, 2009. R. 367-79. After noting Claimant's diagnosis of major depressive disorder in partial remission, R. 370, he found that she has moderate limitations in her activities of daily living and in maintaining concentration, persistence, and pace and mild restrictions in maintaining social functioning. R. 377.

On the same day, Dr. Travis completed a Mental RFC Assessment in which he concluded that Claimant was moderately limited with regards to sustained concentration, persistence and pace. R. 389-90.

### 9. Dr. Bharati Jhaveri, M.D. – State Agency Reviewing Physician

On January 21, 2009 Dr. Bharati Jhaveri ("Dr. Jhaveri") completed a Physical RFC Assessment. R. 381-88. Dr. Jhaveri concluded that Claimant could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour work day, sit for six hours in an eight hour work day, and was unlimited in her ability push and/or pull. R. 382. He found Claimant was occasionally limited in balancing and crawling. R. 383.

On August 6 and 11, 2009 Drs. Donald Cochran, Ph.D. and Vidya Madala, M.D., respectively reviewed and affirmed the findings in the Mental RFC, Physical RFC, and Psychiatric Review Technique Form. R. 403-05.

### 10. Dr. Frank Apantaku, M.D.

On June 30, 2010 Dr. Frank Apantaku, M.D. wrote a letter indicating that he examined Claimant and diagnosed multiple cysts in Claimant's breasts. R. 412. She complained of constant pain in both breasts. *Id.*

### D. The ALJ's Decision - October 22, 2010

Following a hearing and review of the medical evidence, the ALJ rendered a partially favorable decision finding Claimant disabled from May 24, 2008 through June 30, 2009. The ALJ further found that as of July 1, 2009 medical improvement occurred and Claimant was not disabled thereafter.

At step one of the disability analysis, the ALJ found Claimant has not engaged in substantial gainful activity since May 28, 2008. R. 15. At step two, the ALJ found that Claimant has the severe impairments of status post spinal trauma and asthma. *Id.* At step

10

three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment under the Social Security Regulations. *Id.*; R. 17.

The ALJ found that from May 24, 2008 through June 30, 2009, Claimant had the RFC to perform significantly less than the full range of sedentary work. R. 16. Based on VE testimony, the ALJ concluded that during that time, Claimant was unable to perform past relevant work and there were no jobs that existed in significant numbers in the national economy that Claimant could have performed. R. 16.

The ALJ then found that medical improvement occurred as of July 1, 2009. R. 17. Beginning on July 1, 2009, Claimant had the ability to perform sedentary work with the following additional restrictions: she could not perform work involving ladder, rope, or scaffold climbing; she could only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl and use her right lower extremity; she could not work in an environment with concentrated exposure to respiratory irritants; and she must be able to alternate between sitting and standing positions on an hourly basis. R. 17. At step four for this period the ALJ concluded that Claimant was unable to perform her past relevant work. However, at step five, the ALJ found that there are a significant number of jobs in the national economy which Claimant can perform. R. 19. Thus, the ALJ concluded that while Claimant was disabled within the meaning of the Social Security Regulations from May 24, 2008 through June 30, 2009, medical improvement occurred as of July 1, 2009, Claimant's disability ended on that date, and she has not been disabled within the meaning of the regulations since that date. R. 19-20.

## II. LEGAL STANDARDS

**A.  Standard of Review**

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  Under such circumstances, the district court reviews the decision of the ALJ.  *Id.*  The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A "mere scintilla" of evidence is not enough.  *Id.*; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion."  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded.  *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision.  *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011).  It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility

determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010).  Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings.  *Id.*

## B.  Disability Standard

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined by the Social Security Act.  *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009).  "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work.  *Id.*  Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ must determine whether other jobs exist

in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

## III.  DISCUSSION

The question in the case at bar is whether substantial evidence supports the ALJ's decision that medical improvement occurred as of July 1, 2009 effectively ending Claimant's period of disability.  Claimant argues that the ALJ failed to build a logical bridge between the evidence and the medical improvement condition.  Specifically, Claimant argues: 1)  the ALJ improperly rejected Dr. Reyes's opinion; 2) the ALJ did not sufficiently explain her conclusion that medical improvement occurred on July 1, 2009; and 3) the ALJ improperly relied on Claimant's limited treatment without considering her explanation or explaining what type of treatment would be expected.

### A.   The ALJ Did Not Properly Evaluate Dr. Reyes's Opinion.

An ALJ makes an RFC determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184 (July 2, 1996).  In doing so, she must determine what weight to give the opinion of the claimant's treating physician. 20 C.F.R. § 404.1527.  A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2); *see Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010).  If the ALJ determines that the opinion is unsupported or inconsistent with the record, the ALJ may reject the opinion but must give "good reasons" for doing so.  20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602 F.3d 869,

875 (7th Cir. 2010).

When a treating source's opinion is not given controlling weight, the ALJ is to consider a number of factors identified in 20 C.F.R. § 404.1527(d)(2). Those factors include: the length, nature, and extent of the physician and claimant's treatment relationship; whether the physician supported his opinions with sufficient explanations; the consistency of the opinion with the record as a whole; whether the physician specializes in the medical conditions at issue; and any other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527 (d)(2)-(6). An ALJ must "minimally articulate" her reasons for how much weight a treating source's opinion is afforded after consideration of those factors – a very deferential standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)). Finally, unless a treating physician's opinion is given controlling weight, the ALJ must "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist." 20 C.F.R. § 404.1527(f)(2)(ii).

Dr. Reyes's opinion was dated June 29, 2010—one year after the date of medical improvement selected by the ALJ. The ALJ found that, despite Dr. Reyes's opinion that Claimant continues to have a combination of impairments which would preclude substantial gainful activity, "the evidence reveals that the claimant's back condition continued to improve to allow for fairly broad range of sedentary work since July 1, 2009. Records and testimony show that claimant regained a substantial level of functioning with Physical Therapy and other treatment. X-rays from March 2009 show good results." R. 18.

This assessment simply does not meet the standards of 20 C.F.R. 404.1527 as the ALJ merely alluded to one of the requisite factors (consistency with other medical evidence) with respect to Dr. Reyes and did not even mention the other medical opinions. The Court recognizes that the ALJ does not have to give any significance to an opinion on issues reserved to the Commissioner. *Denton v. Astrue*, 596 F.3d 419, 4242 (7th Cir. 2010). However, the ALJ must articulate some consideration of the factors identified in the regulations—the treating history and relationship at the very least. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("And even if there had been sound reasons for refusing to give Dr. Tate's assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit."). Moreover, the Court notes that the ALJ failed to consider or give any weight to other medical opinions of record, including those of the state agency physicians. 20 C.F.R. 404.1527(f)(2)(ii) (requiring the ALJ to explain weight afforded to state agency doctors). In determining that medical improvement occurred, the ALJ did not appropriately weigh, or articulate her weighing of, the medical evidence of record, including but not limited to Dr. Reyes's assessment.

**B.  The ALJ Did Not Build A Logical Bridge From the Evidence to Her Conclusion that Medical Improvement Occurred on July 1, 2009.**

Under the Social Security Regulations, an ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citing SSR 96-8p at *7). If an ALJ fails to explain how he arrived at his RFC conclusion, "this

omission in itself is sufficient to warrant reversal." *Briscoe*, 425 F.3d at 352.

The ALJ's narrative discussion in this case is minimal. The ALJ broadly asserts that "evidence reveals that the claimant's back condition continued to improve to allow for a fairly broad range of sedentary work since July 1, 2009. Records and testimony show that claimant regained a substantial level of functioning with Physical Therapy and other treatment. X-rays from March 2009 show good results (Exhibit 10-F)." R. 18. The ALJ does not cite any evidence that Claimant's pain improved. Her statements concerning improved back condition before July 1, 2009 and Claimant's regained functioning with physical therapy and treatment are not supported by citations to the record. The ALJ does not explain how she selected the July 1, 2009 date, which she was required to do (particularly in light of a treater's opinion a year later which opined that Claimant's spine damage prevents her from doing physical work activities.). The ALJ did not discuss Claimant's ability to perform work on a full-time basis after July 1, 2009. In the ALJ's RFC determination for the May 24, 2008 through June 30, 2009 period the ALJ acknowledges that Progress Notes from April and May 2009 reflect ongoing back pain despite treatment. R. 16. Two pages later, the ALJ cites March 2009 x-rays as showing "good results" in support of her finding that by July 1, 2009 Claimant experienced enough medical improvement to end her disability. R. 18. The ALJ does not explain how she reached the July 1, 2009 date, particularly in light of medical evidence showing that in April and May she was still in pain and a doctor's opinion a year later indicating that Claimant could not perform physical work activities.

In support of her finding that Claimant's disability ended on July 1, 2009 the ALJ notes that treatment has been limited since 2009. R. 18. If the ALJ felt that she needed more information from Dr. Reyes as to the basis of his opinion, the ALJ was free to follow up with Dr. Reyes regarding treatment over the preceding year. What an ALJ is not permitted to do is select a date without providing a basis in the record. Further, as discussed below, Claimant testified that one reason for her lack of treatment is a lack of insurance coverage. The ALJ must consider such an explanation before making a negative inference. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008) (*citing* SSR 96-7).

Additionally, the ALJ did not discuss Claimant's uncontradicted testimony that she must nap several times each day. The ALJ failed to build the requisite logical bridge. *See Briscoe,* 425 F.3d at 352; *Richardson v. Astrue,* 2011 WL 2262927, at *11 (N. D. Ill. June 9, 2011) ("Here, the ALJ did not provide any discussion of Plaintiff's ability to carry out a sustained, eight-hour work day.").

The ALJ simply did not build the requisite logical bridge "describing how the evidence supports each conclusion, citing specific medical facts." *Briscoe*, 425 F.3d at 352. The Court specifically notes that it is not making a finding on whether substantial evidence ultimately supports the ALJ's conclusion; rather, the ALJ has not articulated her analysis to allow a meaningful review.

## C. The ALJ's Credibility Analysis is Patently Wrong.

Claimant contends that the ALJ's credibility determination was erroneous. Because an ALJ is "in the best position to determine the credibility of a witness," a court reviews the

credibility determination "deferentially." *Craft*, 539 F.3d at 678. A credibility determination will be overturned by a court only when it is "patently wrong." *Id.* An ALJ must consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4).

In determining whether a credibility determination is patently wrong, the Court examines whether the ALJ's determination was reasoned and supported. *Jens v. Barnhart*, 347 F.3d 209, 213-24 (7th Cir. 2003). The ALJ must consider a number of factors imposed by the regulations, 20 C.F.R. § 404.1529(c), and must support a credibility finding with evidence in the record. *Smith v. Astrue*, 11 C 2838, 2012 U.S. App. LEXIS 5122, at *10-11 (7th Cir. Mar. 12, 2012). An ALJ may not ignore the claimant's statements regarding pain and other symptoms or disregard them merely because they are not substantiated by subjective medical evidence. SSR 96-7p, 1996 WL 3784186, at *1. In *Parker v. Astrue*, 597 F.3d 920 (7th Cir. 2010) the Seventh Circuit held:

> The administrative law judge's opinion states that "after considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." This is a piece of boilerplate that appears in virtually identical language in both these cases as well as in a third social security disability case argued to us the same day. It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is "not entirely credible" yields no clue to what weight the trier of fact gave the testimony.

*Id.* at 921-22; *see also Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir.2012).

This Court regularly forgives ALJs for use of the boilerplate but only where that boilerplate language is followed by a detailed analysis of the ALJ's credibility finding. *See, e.g., Wurst v. Astrue*, No. 10 C 4142, 2012 U.S. Dist. LEXIS 74282, at *26-27 (N.D. Ill. May 30, 2012). The ALJ in the case at bar did not provide such an analysis. Thus, the ALJ's credibility finding is patently wrong.

Finally, the Court instructs the ALJ to be mindful upon remand to consider Claimant's explanation for limited treatment. R. 18. The ALJ is not required to accept the explanation but is required to consider it before relying on lack of treatment to find Claimant not disabled. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008) (*citing* SSR 96-7).

## III. CONCLUSION

**For the reasons set forth in this opinion, the Court grants Claimant's motion for summary judgment, denies the Commissioner's motion to affirm the Commissioner's decision, and remands the case to the Social Security Administration for further proceedings consistent with this opinion.**

**SO ORDERED THIS 19th DAY OF SEPTEMBER, 2012.**

_Morton Denlow_

_____

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Augustin G. Garcia                        LaShonda A. Hunt
53 West Jackson                           Assistant United States Attorney

Suite 730                               219 South Dearborn Street
Chicago, Illinois 60604                 Chicago, Illinois 60604

**Counsel for Plaintiff**               Joo Hui Kim
                                        Assistant Regional Counsel
                                        200 West Adams Street
                                        Suite 3000
                                        Chicago, Illinois 60606

                                        **Counsel for Defendant**